2000 SD 78

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Julie Ann STEELE, Defendant and Appellant.**

**No. 21061.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided June 14, 2000.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, for plaintiff and appellee.

Becky A. Janssen of Pennington County Public Defender, Rapid City, for defendant and appellant.

GILBERTSON, Justice

[¶ 1.] Julie Ann Steele appeals from a judgment of conviction of possession of a controlled substance in violation of SDCL 22-42-5. She claims the search of her purse, following the arrest of the driver of the vehicle in which she was a passenger, violated her Fourth Amendment right to

protection against unreasonable search and seizure. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On November 26, 1998, Trooper John Boersma assisted Trooper Derek Mann with a vehicle stop south of Rapid City. Mann initially stopped the vehicle for speeding but during the course of the stop noticed the odor of alcohol emitting from within the vehicle. Driver, Scott Meyer, was on probation, a condition of which required that he submit to a breathalyzer test upon request. Meyer refused Mann's request to take the test. He continued to be uncooperative and was arrested for the probation violation and placed in Mann's patrol car. It was determined by breathalyzer test that Steele, Meyer's passenger, was unable to safely drive Meyer's vehicle.

[¶ 3.] Boersma had been requested to search the vehicle incident to Meyer's arrest. He asked Steele to exit the front passenger seat so he could conduct the search. Steele attempted to remove her purse that was resting beside her on the front seat. Boersma requested she leave her purse in the vehicle until his search was completed, which she did. After searching the vehicle, Boersma asked Steele if he would find anything if he searched her purse. Steele replied, "Yeah, there might be something in one of the pockets." Boersma searched the purse and found a purple cloth pouch containing two small plastic bags with residue, a folded paper bindle with residue, two plastic snorting straws, a large paper bindle with three foilers, and a small pocket knife. Boersma then advised Steele of her Miranda rights. She agreed to speak with him and admitted that all of the items were hers, that the powder residue was methamphetamine and that she used methamphetamine. Subsequent chemical analysis confirmed the residue was methamphetamine.

[¶ 4.] Steele was charged with possession of a controlled substance in violation of SDCL 22–42–5. She pled not guilty and filed a motion to suppress evidence resulting from the search of her purse. Following a hearing, and after considering the parties' written briefs, the trial court denied Steele's motion. Steele went to trial on stipulated evidence. Her objection to admission of the evidence from the search was again denied and she was found guilty. She appeals, claiming a violation of her Fourth Amendment right against unreasonable search and seizure.

## ANALYSIS AND DECISION

■ [¶ 5.] As the general rule, warrantless searches are unreasonable and therefore unconstitutional unless the search falls into one of the limited exceptions. *State v. Meyer*, 1998 SD 122, ¶¶ 21–27, 587 N.W.2d 719, 723–24. The United States Supreme Court analysis of Fourth Amendment protections permit the search of a purse that is inside a vehicle, where that search is incident to a lawful arrest of the driver of the vehicle.

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.

*New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981); *State v. Bonrud*, 393 N.W.2d 785, 787 (S.D.1986); *State v. Rice*, 327 N.W.2d 128 (S.D.1982). We applied the rule of *Belton* in *Rice*, noting that our state constitution provides no greater protection against unreasonable searches and seizures than does the federal constitution

where the search is incident to arrest. *Rice*, 327 N.W.2d at 131–32; *accord State v. McCreary*, 82 S.D. 111, 123, 142 N.W.2d 240, 247 (1966).

■ [¶ 6.] *Belton* held that the area of the arrestee's immediate control always includes the passenger compartment of the vehicle and its containers. 453 U.S. at 460–61, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.[1] It defined "container" as "any object capable of holding another object," including "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at n4. This definition embraces Steele's purse, lying on the front seat within 12–18 inches from Meyer at the time of his arrest.

[¶ 7.] The rationale for the *Belton* rule is "the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape,' and the need to prevent the concealment or destruction of evidence." *Belton*, 453 U.S. at 457, 101 S.Ct. at 2862, 69 L.Ed.2d 768 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)).[2] The rule provides law enforcement with a bright-line rule they can apply in the field. *See Vasquez v. State*, 990 P.2d 476, 484 (Wy.1999) ("The bright-line rules of *Belton* and *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) eliminated much of the seemingly inconsistent rulings caused by fact-driven analysis and cleared confusion

concerning automobile search law for law enforcement and the local judiciary."); *State v. Kelly*, 963 S.W.2d 866, 869 (Tex. App. 1998) (purpose of the *Belton* rule was "to free officers in the field from making difficult legal decisions during the often-volatile circumstances of an arrest. [The rule] eliminates the officer's need to determine what constitutes the area within the arrestee's reach when the area includes the interior passenger compartment of a vehicle and the arrestee is its recent occupant.)".

■ [¶ 8.] Steele argues she did not voluntarily leave her purse and did so only at Boersma's request. She claims his ordering her to leave her purse resulted in an unconstitutional search and the evidence found therein was inadmissible. However, if Steele's argument prevailed and passengers were permitted to remove containers from the vehicle prior to the search, the *Belton* rule would be nullified. Weapons and contraband, the objects of a lawful search, would be removed from the vehicle and the arrestee able to hide these items from police.

■ [¶ 9.] Moreover, the *Belton* exception applies to the set of circumstances existing at the time of Meyer's arrest since the search of the vehicle is "a contemporaneous incident of that arrest." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d 768. "A search incident to arrest permits a warrantless search of an individual and of the area within his immediate vicinity following his arrest, so long as the search is

---

1. In *Belton*, a passenger's jacket found in the backseat of an automobile was searched after the passenger, the driver, and the car's other occupants were placed under arrest. The Court specifically extended the scope of a lawful search incident to an arrest to articles within the passenger compartment of a vehicle, even where the arrestee has been moved away from the vehicle and is no longer within reach of such items. 453 U.S. at 457–62, 101 S.Ct. at 2862–65, 69 L.Ed.2d at 775.

2. The Supreme Court declined to extend the parameters of *Belton's* application where no arrest was made and therefore, the same concerns for officer safety and prevention of loss or concealment of evidence did not exist. *See Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). In *Knowles*, the defendant was only issued a traffic citation and was not placed under arrest. The Court held that the full search of defendant's automobile pursuant to issuance of a citation for speeding violated the Fourth Amendment.

contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Rice,* 327 N.W.2d at 130. In *Rice,* we held that the search of a glove compartment that followed a search of the interior of the vehicle "was a logical extension of the search since its contents were readily available to the occupants prior to their exiting from the vehicle." *Id.* at 132. The search was upheld as a lawful search incident to an arrest under both the state and federal constitutions. *Id.*

[¶ 10.] At the time of the arrest, Steele's purse was resting on the front seat within Meyer's immediate reach "prior to [his] exiting from the vehicle." *Rice, supra.* Adherence to Steele's argument would permit her to alter these facts after his arrest. If no container existed within the vehicle at the time of Meyer's arrest, *Belton* would only permit a search of the vehicle's interior. Since a container did exist within the vehicle at that point in time, *Belton* authorizes a search of that container. Steele may not, by attempting to remove her purse, change the facts present to law enforcement at the time justification for the search was triggered. *Cf. Thomas v. State,* 748 So.2d 988, 1999 WL 820572, *5 (Fla.1999) (occupants of a vehicle cannot avoid the consequences of *Belton* merely by stepping outside of the vehicle as the officers approach).

[¶ 11.] A similar issue, under slightly different facts, was addressed in *State v. Newsom,* 132 Idaho 698, 979 P.2d 100 (1998), *cert. denied sub nom Idaho v. Newsom,* 526 U.S. 1158, 119 S.Ct. 2048, 144 L.Ed.2d 215 (1999). In *Newsom,* officers initiated a registration check of a vehicle after observing it make several turn signal violations. They found outstanding felony warrants for the arrest of the vehicle's registered owner. An identification check revealed the driver was not the vehicle's owner, but he also had outstanding felony warrants and was arrested. Passenger, Lori Kay Newsom, was sitting in the front

seat of the vehicle with her purse on her lap. Officers advised her to exit the vehicle so they could conduct a search and, according to Newsom, instructed her to leave her purse in the vehicle. The vehicle and the purse were searched. Officers found methamphetamine in the purse and arrested Newsom.

[¶ 12.] Newsom's motion to suppress this evidence was denied by the trial court based on the rule in *Belton.* Newsom pled guilty, reserving the right to appeal the denial of the suppression motion. The Idaho Court of Appeals affirmed; Newsom appealed to the Idaho Supreme Court which vacated and remanded for further proceedings.

[¶ 13.] The Idaho high court correctly stated that *Belton* does not authorize the search of a *passenger* of the vehicle based solely on the arrest of another occupant of the vehicle, rather the authorized search is of the vehicle and its contents. " 'The lawful custodial arrest justifies the infringement of any privacy interest *the arrestee may have.*' " *Newsom,* 979 P.2d at 102 (quoting *Belton,* 453 U.S. at 461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775) (emphasis added). However, the court noted Newsom's purse was on her lap and treated the purse not as a searchable container but as part of Newsom's person, holding it was not subject to search incident to the arrest of another occupant of the vehicle. It stated that "[i]n these circumstances, the passenger's purse was entitled to as much privacy and freedom from search and seizure as the passenger herself." *Id.*

[¶ 14.] Although the Idaho high court relied only on *Belton* in support of its holding, it did not discuss the possibility that the arrestee could hide a weapon or contraband, the harm sought to be contained by *Belton,* in another's purse even where that purse is on a passenger's lap.

See *Wyoming v. Houghton*, 526 U.S. 295, 305, 119 S.Ct. 1297, 1303, 143 L.Ed.2d 408 (1999) ("A criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car – perhaps even surreptitiously, without the passenger's knowledge or permission." (internal citation omitted)).[3] We do not find the *Newsom* holding to be sound reasoning considering the rationale of *Belton*. It also blurs the bright line *Belton* sought to provide law enforcement working in the field.

[¶ 15.] In *State v. Treutelaar*, 96-3249-CR, 1997 WL 213040 (Wis.Ct.App.,May 1, 1997), the Wisconsin Court of Appeals addressed the issue of passenger ownership of a searched container. Bonny Treutelaar was a passenger in a vehicle that was stopped during a routine traffic stop and the driver subsequently arrested under an outstanding warrant. Treutelaar was asked by a police officer to exit the vehicle so they could conduct a search incident to the driver's arrest. She asked to be given an 8 × 10 manila envelope lying on the passenger floorboard, explaining it contained some papers and money she wanted to take with her. She was advised to leave the envelope in the vehicle until it could be searched for weapons and contraband. The envelope was searched and found to contain lipstick, mascara, and three wire mesh screens, one smudged with cocaine residue. Treutelaar was arrested and charged with possession of drug paraphernalia.

[¶ 16.] Her motion to suppress admission of this evidence was denied and she was convicted at trial. On appeal, judgment was affirmed. The court applied *Belton*, noting the envelope was large enough to conceal a weapon or evidence and was within the arrestee's reach.

> The ownership of the envelope was irrelevant to the safety of the officers, or the reasonableness of the search.... [I]f we adopted the defendant's theory, a driver could simply hand over all weapons and contraband to his passenger, or the passenger could claim ownership of any containers in the vehicle, and avoid detection.

*Id.* at *4. The court held that the belongings of a passenger may be validly searched after the driver is arrested so long as those belongings are large enough to conceal weapons or contraband and are located in the vehicle when the search is made. *Id.*

[¶ 17.] This was also the position of the United States Supreme Court in *Houghton, supra,* regarding ownership of the container to be searched. There, the search of a passenger's purse was made after a vehicle was stopped for speeding. The basis for the search, rather than incident to an arrest, was probable cause to believe the vehicle contained contraband after the driver was observed to have a hypodermic syringe in his shirt pocket and candidly admitted he used it to take drugs. The passenger had not attempted to take her purse when she exited the vehicle but later claimed a Fourth Amendment violation on the basis that her purse was her

---

**3.** In a very recent case, the Idaho Supreme Court avoided application of *Belton* and *Newsom* altogether and held the search of a passenger's purse following the arrest of her husband for driving with a suspended license was lawful as part of an investigatory stop and frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *State v. Wright*, 996 P.2d 292 (Idaho 2000). The passenger exited the vehicle clutching her purse and was nervous and uncooperative when officers asked to look in the purse. When she announced she had weapons therein and started

to reach into her purse, she was handcuffed for the officers' safety and the purse taken from her. Officers found a handgun, several pocket knives, methamphetamine, marijuana, a large amount of cash, and a ledger in the purse. The high court held *Belton* inapplicable (presumably because of its holding in *Newsom* ) but that *Newsom* did not preclude the search under the *Terry* stop and frisk rationale which involves preventing a crime law enforcement suspects is about to happen. *Id.* at 297.

personal effect and therefore outside the scope of the search. The Court stated that

> the permissible scope of a warrantless car search 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.' ... A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car.

*Houghton,* 526 U.S. at 302, 119 S.Ct. at 1301, 143 L.Ed.2d 408 (emphasis original) (quoting *Ross,* 456 U.S. at 824, 102 S.Ct. at 2173, 72 L.Ed.2d 572). Likewise, Steele's purse was " 'in' the car" when she attempted to remove it from the search.

[¶ 18.] In such a search, the Supreme Court has identified the dual governmental goals to be officer safety and prevention of the loss of evidence. *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d 685. These goals are thwarted if a passenger is permitted to sweep the vehicle of containers large enough to conceal weapons or evidence just prior to the search. The Supreme Court has not created an exception, based on legitimate governmental concerns, to the general rule against warrantless searches only to have it negated by passenger discretion.

[¶ 19.] We find the search of Steele's purse was neither unlawful nor improper. By requesting that she leave the purse in the vehicle, Boersma merely assured that a container that he had the legal right to search under *Belton* was not removed from the confines of the authorized area. His actions comport with both federal and state constitutional protections.

[¶ 20.] We affirm.

[¶ 21.] MILLER, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 22.] SABERS, and AMUNDSON, Justices, dissent.

AMUNDSON, Justice (dissenting).

[¶ 23.] I respectfully dissent.

[¶ 24.] I disagree with the majority's reliance on New York v. Belton as controlling in this case. In *Belton,* the passenger was subject to a "lawful custodial arrest" and therefore, subject to a search incident to that arrest. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). That is not the situation before this Court. In the present case, Steele was not arrested, she was merely a passenger in a vehicle where the driver was stopped for speeding and later arrested. The search of Steele's purse was not incident to a lawful custodial arrest. There is no similarity between the facts before us and *Belton* ; therefore, any reliance on *Belton* is misplaced.

[¶ 25.] In *State v. Newsom,* 132 Idaho 698, 979 P.2d 100 (1998), the Idaho Supreme Court was faced with facts analogous to those presently before this Court. After officers had stopped a vehicle and arrested the driver, the passenger (Newsom) was asked to exit the vehicle. Upon leaving the vehicle, Newsom attempted to remove her purse. The officer ordered her to leave her purse in the vehicle. While searching the vehicle, the officers searched Newsom's purse and found two glass vials and several tinfoil bindles of methamphetamines. Newsom moved to suppress the evidence, but it was ultimately denied based upon being " 'a search incident to a valid arrest under the *Belton* case.' " *Id.* at 101.

[¶ 26.] On appeal, the Idaho Supreme Court identified the rule announced in *Belton* as,

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed....

*Id.* (citing *Belton,* 453 U.S. at 460–61, 101 S.Ct. at 2864, 69 L.Ed.2d at 775 (citations omitted)). In reversing the denial of Newsom's motion to suppress, the court held:

*Belton* does not authorize the search of another occupant of the automobile merely because the other occupant was there when the arrest occurred. As the Supreme Court carefully pointed out in *Belton,* "the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." [citation omitted.] Therefore, in the present case *Belton* does not authorize a search of the passenger based solely on the arrest of the driver.

. . . .

In these circumstances, the passenger's purse was entitled to as much privacy and freedom from search and seizure as the passenger herself.

[¶ 27.] In *State v. Nelson,* 89 Wash.App. 179, 948 P.2d 1314 (1997), the passenger in a vehicle driven by Nelson was arrested based upon an outstanding warrant. Nelson was asked to get out of the truck and leave her purse, which had been between her legs at the time. During the officer's search of the vehicle, they searched Nelson's purse and found methamphetamine and drug paraphernalia. Nelson moved to suppress the evidence seized from her purse and the motion was granted. On appeal by the State, the court noted,

[t]he valid arrest of a driver justifies a search of the car's passenger compartment, not including locked containers.

The valid arrest of a passenger justifies a search of the car's passenger compartment, not including locked containers. The valid arrest of either the driver or passenger justifies the search of a purse *found in the car,* and without so holding, we assume this is true regardless of whether the purse belongs to the driver or the passenger.

*Id.* at 1316. The court stated that a distinction exists between a purse left in the car by the defendant when leaving the car and a purse kept by the defendant upon exiting, but ordered to leave the purse in the car pursuant to an officer's instructions. *Id.* The court further opined,

The distinction is based upon the amount of control the non-arrested person maintains over his or her personal property. When the person maintains control over the personal property and there are no furtive movements indicating he or she is trying to hide something, the police are not allowed to search the property.

In order to do a pat-down search of a person, the police must be able to point to specific and articulable facts creating an objectively reasonable belief that a suspect is armed and presently dangerous. [citation omitted.] Thus, if the police do not believe a person presents a danger, they cannot search the person and their clothing. This would include a purse they are carrying.

*Id.*

[¶ 28.] In a recent United States Supreme Court decision, *Bond v. United States,* —— U.S. ——, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000), the Supreme Court was faced with a Border Patrol Officer's squeezing manipulation of Bond's soft luggage which was located above his seat in the bus head storage space. The Supreme Court noted that "[t]he Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be violated....'" — U.S. at —, 120 S.Ct. at 1464, 146 L.Ed.2d at 369. The Court further opined:

> Our Fourth Amendment analysis embraces two questions. First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that "he [sought] to preserve [something] as private...." Second, we inquire whether the individual's expectation of privacy is "one that society is prepared to recognize as reasonable."

— U.S. at —, 120 S.Ct. at 1465, 146 L.Ed.2d at 370.

[¶ 29.] In the present case, there is no doubt that Steele attempted to preserve privacy by leaving the vehicle with her purse. Further, it is a reasonable expectation of Steele that her purse will not be subject to search by other individuals. The majority attempts to circumvent Steele's Fourth Amendment rights by ignoring the *Newsom* opinion on the grounds that it "blurs the bright line *Belton* sought to provide law enforcement in the field" and because *Newsom* "did not discuss the possibility that the arrestee could hide a weapon or contraband, the harm sought to be contained in *Belton,* in another's purse even where the purse is on a passenger's lap." Why do we continually utilize this phantom safety crutch to validate improper searches? As stated in *Nelson,* to justify a pat-down search of Steele and her purse, the police officers "must be able to point to specific and articulable facts creating an objectively reasonable belief that a suspect is armed and presently dangerous." *See Nelson,* 948 P.2d at 1316. Where a person maintains control over their personal property, such as Steele did when she attempted to leave the vehicle with her purse, when there are no furtive movements indicating she is trying to hide something, a police officer is not allowed to search her person and property. A review of this record fails to show any evidence that the officers feared for their safety. To disallow the suppression of this evidence against Steele would be to blur the constitutional rights of passengers in automobiles and subject them and their property to searches and seizures solely on the basis that they were in the wrong place at the wrong time. I find this search violated the Fourth Amendment and I would reverse.

[¶ 30.] SABERS, Justice, joins this dissent.