[Cite as *State v. Alls*, 2018-Ohio-3353.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| WILLIAM ALLS | : | Case No. 17 CAA 10 0070 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Delaware County
                                  Court of Common Pleas, Case No.
                                  17-CR-I-02-0097

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 August 21, 2018

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

CAROL HAMILTON O'BRIEN                   APRIL F. CAMPBELL
Prosecuting Attorney                     Campbell Law, LLC
                                         545 Metro Place South, Ste 100
By: KIMBERLY E. BURROUGHS                Dublin, Ohio 43017
Assistant Prosecuting Attorney
Delaware Co. Prosecutor's Office
140 North Sandusky Street
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Appellant, William Alls, appeals the trial court's denial of his motion to suppress the introduction of the contents of his wallet.  Appellant entered a plea of no contest to one count of Forgery in violation of R.C. 2913.31(A)(3), a fifth degree felony, and was found guilty.  Appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   This case arises from an investigation of an alleged use of fraudulent credit cards on August 27, 2016 in Delaware County.  An employee of a local Staples department store reported that a white male attempted to purchase a gift card and, when the store employee asked the man for photo identification, the man bolted from the store and entered a blue van in the parking lot.  The Staples employee reported the incident and provided the Delaware County Sheriff's office with a description of the man, the van he entered and the other occupants of the van.  He also provided a photograph of the license plate on the van. The Staples employee reported that the same white man, and one of the other occupants, a white woman, had used a fraudulent credit card at that Staples store several days prior to this incident.

{¶3}   Deputies Lee, Griffith, and Johnson of the Delaware County Sheriff's Office were dispatched to investigate.  Deputy Lee found the vehicle in the parking lot of a nearby department store and watched the vehicle until the white man came out of a store and returned to the van.  The white female in the van exited and entered on the driver side; the white male, identified as Jeremiah Jones, entered in the passenger side.  Deputy Lee stopped the van and asked Mr. Jones to exit the vehicle and asked him several

questions. When Mr. Jones exited the van, Deputy Lee noticed a stack of credit cards banded together on the floor of the van.

{¶4} Mr. Jones initially denied going to the Staples earlier that day but later admitted he had been in Staples and attempted to purchase a gift card. He claimed that the transaction was unsuccessful because the gift card he had used to purchase the new gift card was lacking funds. This story was inconsistent with the report by the Staples employee who described Mr. Jones as fleeing from the store before completing the transaction.

{¶5} Deputy Lee asked Mr. Jones if he had anything dangerous on his person and Mr. Jones admitted he had a syringe in his pants pocket. Deputy Lee patted Mr. Jones down, found the syringe and what appeared to be drugs, handcuffed and detained him in the back of the deputy's cruiser.

{¶6} Appellant had remained in the vehicle and was asked by Deputy Lee to step outside the van. When he exited the vehicle he had a cell phone and a wallet in his hands and the deputy asked him to put them on the roof of the van while Deputy Lee patted him down. Appellant was cooperative and consented to a search of his pockets. Appellant denied possessing any drug paraphernalia or being involved in Mr. Jones activities. He was then handcuffed and put in the back of Deputy Griffith's cruiser. According to the testimony at trial, the deputies forgot that the cell phone and wallet were still on the roof of the van. They did not search the wallet at that time.

{¶7} Deputy Lee then asked the female to step out of the van and spoke to her briefly. She admitted that Jones was her husband and that he was a heroin user. She was not handcuffed, but was placed in the same cruiser as her husband. During the

suppression hearing Deputy Lee could not recall why the woman was not handcuffed but he did recall placing her in the cruiser for officer safety. The woman was not arrested and she was permitted to drive the van home once the van had been searched.

{¶8}    The deputies searched the van and retrieved the stack of credit cards Deputy Lee observed when Mr. Jones had exited the van. They also found syringes hidden throughout the vehicle, including the storage pockets attached to the front passenger seat immediately in front of where the Appellant was sitting. After searching the van, Deputy Lee picked up the wallet that Appellant had placed on top of the van and found three credit or debit cards inside with the Appellant's name on them. Using a handheld scanning device, the deputies determined that the electronic information encoded on those cards did not match the information printed on them. The three credit cards were determined to be forged and Appellant was arrested.

{¶9}    Appellant was indicted on three counts of forgery, a violation of R.C. 2913.31 (A)(3), a felony of the fifth degree. Appellant filed a motion to suppress the discovery of the three credit cards on May 1, 2017 and asserted several bases for the suppression of the credit card evidence. The State filed a memorandum contra on May 15, 2017 and a hearing was conducted on May 31, 2017. On June 12, 2017 the trial court issued a judgment entry denying the motion to suppress finding, among other things, that "[b]y carrying his wallet in a mobile vehicle and then by openly revealing to the deputies that wallet's existence in the middle of a roadside investigative stop, the defendant willingly subjected that wallet to the kind of warrantless search that state and federal courts have repeatedly permitted under the Fourth Amendment's automobile exception." (Entry Denying Motion to Suppress, June 12, 2017, p. 16).

{¶10} Appellant then pled no contest on August 16, 2017 to a single count of forgery and the trial court accepted his plea and sentenced him on September 26, 2017. Appellant filed a notice of appeal on October 9, 2017 and submitted two assignments of error:

{¶11} "I. ALLS'S MOTION TO SUPPRESS THE CONTENTS OF HIS WALLET SHOULD HAVE BEEN GRANTED:

THE DEPUTIES SEIZED ALLS'S WALLET WITHOUT PROBABLE CAUSE, TO SEARCH AND DETAIN ALLS UNREASONABLY IN HANDCUFFS (sic). THUS, THE FRUIT OF THE POISONOUS TREE DOCTRINE APPLIES TO THEIR SUBSEQUENT NONCONSENSUAL AND WARRANTLESS SEARCH OF IT."

{¶12} "II. ALLS'S MOTION TO SUPPRESS THE CONTENTS OF HIS WALLET ALSO SHOULD HAVE BEEN GRANTED, BECAUSE THE AUTOMOBILE EXCEPTION DOES NOT APPLY AND CANNOT CURE, THE OFFICERS' UNLAWFUL SEARCH OF IT."

## STANDARD OF REVIEW

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 154–155, 797 N.E.2d 71, 74, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243,652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap, supra.* However, once an

appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, also, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698.

{¶14} Appellant does not contend that the trial court erred as to the findings of fact, so we accept the trial court's findings and examine the application of the law to the facts.

**ANALYSIS**

{¶15} Appellant does not object to the initial stop of the van by Deputy Lee, nor does he assert that the stop was unreasonably extended. Instead Appellant claims that his wallet was seized by the investigating deputies, that the seizure was unreasonable and, therefore, the evidence discovered therein should be suppressed. We cannot agree that the facts support the conclusion that the wallet was seized. Appellant was asked to step out of the vehicle and he complied, with a wallet in one hand and a cellphone in the other. The officers asked him to put the items on the roof of the vehicle and Appellant was thereafter detained in the rear of the cruiser.

{¶16} The Appellant analyzes the facts regarding his detention in the cruiser, in hand-cuffs, and concludes the detention was unreasonable, and asserts that the search

of the wallet and the evidence obtained as a result should suppressed. The connection between the alleged illegal detention and the discovery of the content of the wallet does not exist, and, therefore the exclusionary rule is not triggered. "The exclusionary rule does not apply, however, if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint, as where the police have an independent source for discovery of the evidence." *Silverthorne Lumber Co., Inc. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, as cited in *State v. Carter,* 69 Ohio St.3d 57, 1994-Ohio-343, 630 N.E.2d 355. Because the evidence that is the subject of the motion was not discovered as a result of the placement of the Appellant in hand-cuffs in the rear of the cruiser, the propriety of the detention is not pertinent to the resolution of this case and, therefore, we overrule the first assignment of error.

{¶17} Appellant initially attacked several aspects of his encounter with the Delaware Sheriff's Office, but since the filing of the motion to suppress, he no longer contends that the stop was unwarranted, or that he was improperly removed from the vehicle and searched. He does contend that his detention in hand-cuffs in the rear of the cruiser was unwarranted, but we have found that issue immaterial to the resolution of his appeal. The second assignment of error contends that the "automobile exception" does not apply to the search of the wallet and, therefore the evidence from the wallet was illegally obtained and should be suppressed.

{¶18} The parameters of the search of an automobile have developed to the extent that during a legal stop, and assuming probable cause, the State may search all

areas of an automobile including containers in which the target of the search may be found.

> If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle, and all contents of the vehicle that may conceal the object of the search. *Wyoming v. Houghton* (1999), 526 U.S. 295, 119 S.Ct. 1297, 1301, 143 L.Ed.2d 408. This rule applies to all containers within a car, without qualification as to ownership, and without a showing of individualized probable cause for each container. *Id.*

*State v. Duncan,* 5th Dist. Fairfield No. 99-CA-32, 1999 WL 976207, *2, cause dismissed, 87 Ohio St.3d 1448, 719 N.E.2d 965 (1999), vacated, 87 Ohio St.3d 1456, 720 N.E.2d 539 (1999), and aff'd, 90 Ohio St.3d 54, 2000-Ohio-12, 734 N.E.2d 811 (2000).

{¶19} In the case before us, the deputies found drug paraphernalia and suspected heroin in possession of one of the passengers of the van, and clearly saw a hypodermic needle on the floor of the van. Deputy Lee noted a stack of credit cards on the floor of the van raising his suspicion that one of the passengers was involved in criminal activity involving the cards. This information gave the officers probable cause for the search of the vehicle and any containers within the vehicle. Appellant does not contend that the officers did not have probable cause to search the vehicle, but would have us conclude that the fact the wallet was outside the car, on the roof, eliminates the "automobile search" exception. We must reject appellant's assertion.

**{¶20}** The United States Supreme Court when describing this "automobile exception" referred to a summary of the holding in *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2165, 72 L.Ed.2d 572 (1982) stated:

> If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id., at 825, 102 S.Ct. 2157 (emphasis added). And our later cases describing Ross have characterized it as applying broadly to all containers within a car, without qualification as to ownership.

*Wyoming v. Houghton,* 526 U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) We have applied this precedent and held that "A police officer with probable cause to search a vehicle may inspect a passenger's belongings found in the car which are capable of concealing an object of the search. *State v. Eiler*, 5th Dist. Tuscarawas No. 2015 AP 05 0023, 2016-Ohio-224, ¶ 31.

**{¶21}** Appellant contends that the wallet was not in the vehicle, but on the vehicle when the search was conducted.  We are unwilling to accept this distinction based upon the balancing test described in *Wyoming*:

> Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property they transport in cars. See, e.g., *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). The degree of intrusiveness of a package search upon personal privacy and personal dignity is substantially less than the degree of intrusiveness of the

body searches at issue in *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, and *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238. In contrast to the passenger's reduced privacy expectations, the governmental interest in effective law enforcement would be appreciably impaired without the ability to search the passenger's belongings, since an automobile's ready mobility creates the risk that evidence or contraband will be permanently lost while a warrant is obtained, *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406; \*\*1299 since a passenger may have an interest in concealing evidence of wrongdoing in a common enterprise with the driver, cf. *Maryland v. Wilson, 519 U.S. 408, 413-414, 117 S.Ct. 882, 137 L.Ed.2d 41;* and since a criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car, see, *e.g., Rawlings v. Kentucky, 448 U.S. 98, 102, 100 S.Ct. 2556, 65 L.Ed.2d 633.*

*Wyoming, supra* at 296.

**{¶22}** Appellant's expectation of privacy was sufficiently outweighed by the governmental interest in effective law enforcement preserving the "automobile exception" in the circumstances presented to us by this case.

**{¶23}** We acknowledge there are limitations to the "automobile exception" rule. Had the wallet been removed from the Appellant's clothing or taken from him to be searched immediately, the result may have been different. *Wyoming* at 308; *State v. Mercier,* 117 Ohio St.3d 1253, 2008-Ohio-1429, 885 N.E.2d 942, ¶ 5. The State may not compel the Appellant to leave his property in or on the vehicle with the purpose of

facilitating a search of property that may not otherwise occur without probable cause to search the owner, *Id. at* ¶ 12 but the facts in this case do not support such subterfuge. For unexplained reasons, Appellant exited the vehicle with a cellphone and a wallet in his hands; the deputy asked him to put the items down to facilitate a pat down and a consensual search. The wallet was left on the vehicle until later when it was searched and forged credit cards were discovered therein. The placement of the wallet on the van was not ordered by the deputy as a pretext for a search, but simply occurred in the course of the investigation. Further, because probable cause to search the vehicle existed at the time the wallet was in the van and because that probable cause still existed when the deputy asked Appellant to put the wallet on the van, the search of the wallet was not a violation of the Fourth Amendment. *Ohio v. Abbuhl,* 5th Dist. Tuscarawas No. 11AP030014, 2011-Ohio-6550, ¶ 15.

**{¶24}** We find that the initial stop of the vehicle was appropriate and, after discovering evidence of drugs and a suspicious stack of credit cards, the search of the vehicle after removal of the Appellant was supported by probable cause. The Appellant held a wallet in his hand when he exited the vehicle and placed it on the van. We find that the facts of this case support a conclusion that the automobile exception described in *Wyoming* and *Mercier* applies and that the trial court did not err by denying the motion to suppress the evidence.

**{¶25}** The Appellants second assignment of error is overruled and the decision of the Delaware Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.